UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JEROME MARTIN, )
)
Petitioner, )
)
vs. ) Case No. 4:12CV333 RLW
)
TERRY RUSSELL, )
)
Respondent. )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Jerome Martin's Petition under 28 U.S.C.

§2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1 ("Motion")).

Because this Court has determined that Martin's claims are inadequate on their face and the

record affirmatively refutes the factual assertions upon which Martin's claims are based, this

Court decides this matter without an evidentiary hearing.[1]

## BACKGROUND

The Missouri Court of Appeals summarized the evidence regarding this case as follows:[2]

Tyrone Harris identified [Martin] as the driver of a black car that pulled up to his
home the morning of September 7, 2002. Tyronne Harris testified that [Martin]

---

[1]"A district court does not err in dismissing a movant's motion without a hearing if (1) the
movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the
allegations cannot be accepted as true because they are contradicted by the record, inherently
incredible, or conclusions rather than statements of fact.'" *Buster v. U.S.*, 447 F.3d 1130, 1132
(8th Cir. 2006) (quoting *Sanders v. U.S.*, 341 F.3d 720, 722 (8th Cir. 2003)(citation and quotation
marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (in a § 2254 case,
holding that "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . .
contentions that in the face of the record are wholly incredible.").

[2]The state court's factual findings are presumed to be correct, and Martin bears the burden
of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

asked if Torey Miller, Tyrone's brother, and Keyshia Harris, Tyrone's sister, were at home. Tyrone told him no, [Martin] left.

While walking to a nearby Mobile gas station later the same day, Keyshia Harris ("Victim") heard someone call her nickname from a black car. When she turned, the driver of the black car shot her in the chest. She later identified [Martin] as the shooter. The State provided evidence that [Martin] had a motive to shoot Victim because he believed her brother Torey Miller had killed his cousin.

Two years after the shooting, Victim and a friend, Terrel McMorris, saw [Martin] at a club. Mr. McMorris testified at trial that Victim was shocked to see [Martin], that Victim identified [Martin] as the person who shot her, and that [Martin] said he had shot Victim because of what her brother did. Victim and [Martin] argued. [Martin] was then detained by security guards.

(Respondent's Exhibit L).

In August 2004, Martin was indicted on charges of first-degree assault and armed criminal action for shooting Keyshia Harris ("Keyshia"). A jury found him guilty in September 2006 of both charges, and he was sentenced to 14 years' incarceration. The state court affirmed Martin's convictions and sentence. *State v. Martin*, 242 S.W. 3d 743 (Mo. Ct. App. 2007). Martin filed a Rule 29.15 motion for post-conviction relief, which was later amended by counsel. The motion court denied relief on September 14, 2009, after an evidentiary hearing. On March 15, 2011, the Missouri Court of Appeals affirmed the decision of the motion court. (Respondent's Exhibit L); *Martin v. State*, 333 S.W.3d 534, 535 (Mo. Ct. App. 2011).

On February 21, 2012, Martin filed this Motion seeking relief based upon the following overlapping grounds:

(1)    Martin alleges a *Brady3* violation with regards to five pieces of evidence which he alleges the State possessed, were exculpatory, and failed to turn over.

(2)    Martin alleges trial counsel was ineffective for failing to present four separate pieces of evidence, three of which are the subject of the *Brady* claims.

---

3 *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

(3)     Martin claims that appellate counsel was ineffective for failing to raise the failure to the State to disclose the EMS record (one of the five records covered by the *Brady* claim) and for failing to allege that a mistrial should have been granted when the State referred to EMS involvement while cross-examining Martin's expert.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "'A state court's decision is contrary to ... clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision ... and nevertheless arrives at a [different] result.'" *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that § 2254(d)(1) "restricts the source of

clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. A State court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. A State court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

## DISCUSSION

### I. Ground One: Alleged *Brady* Violations

Martin claims that the State failed to disclose a prior plea or conviction of Terrel McMorris for making a false report. (ECF No. 1 at 25). Second, Martin asserts that the State failed to disclose a favorable deal that Ms. McMorris and Keyshia Harris received in their own cases. (ECF No. 1 at 25). Third, Martin asserts that the State failed to disclose the original police incident report, the subsequent investigative report, and the Circuit Attorney's Office's initial refusal to issue a warrant based upon Keyshia's refusal to cooperate. (ECF No. 1 at 25-26). Fourth, Martin maintains that the State failed to disclose a statement made in a public location and overheard by two members of the Circuit Attorney's Office by Keyshia in which Keyshia stated that Jennifer Davis had a member of her family shoot Keyshia. (ECF No. 1 at 26). Fifth, Martin alleges the State "knew" about the EMS report on Keyshia but failed to provide it to defense counsel. (ECF No. 1 at 26).

The Court first notes that no claim regarding any *Brady* or discovery violation was included in the motion for new trial. (Respondent's Exhibit C at 47-54). No claim regarding any

*Brady* or discovery violation was raised on direct appeal. (Respondent's Exhibit D). No claim regarding any *Brady* or discovery violation was raised in the pro se post-conviction motion. (Respondent's Exhibit H at 1-14). However, Martin did allege in the pro se motion that trial counsel was ineffective for failing to investigate and call Assistant Circuit Attorney Robert Craddick as a witness to impeach Ms. Harris. (Respondent's Exhibit H at 10-11).[4] No claim related to any of these issues was included in the appeal from the denial of the amended motion. (Respondent's Exhibit J).

### A. Failure to Properly Exhaust State Remedies/Default of State Remedies

Before presenting a claim for review in a federal habeas petition, a petitioner must properly exhaust his state remedies. 28 U.S.C. §2254(b). The "exhaustion requirement is satisfied only when the federal claim is 'fairly presented' to the state courts." *Stranghoener v. Black*, 720 F.2d 1005, 1007 (8th Cir. 1983). A claim is not fairly presented when factual allegations with a significant impact on the merits of the claim are raised for the first time in federal court. *Id.* For a claim to be fairly presented and for state remedies to be properly exhausted, a petitioner must have raised the claim on direct appeal or in state post-conviction proceedings. *Davis v. Campbell*, 608 F.2d 317, 321 (8th Cir. 1979).

Under Missouri law, claims not included in the amended motion for post-conviction relief are not considered to be before the motion court. *Wills v. State*, 321 S.W.3d 375, 386 (Mo. Ct. App. 2010); *Self v. State,* 14 S.W.3d 223, 226 (Mo. App. S.D.2000) ("Allegations in a *pro se* motion that are not included in a subsequently filed amended motion are not for consideration."). When appellate court review of a post-conviction motion is available, failure to include a claim made to the motion court in an appeal operates as a procedural bar to consideration of such a claim by the

_____

[4] Martin alleges that the State failed to disclose a statement made by Keyshia in a public location and overheard by two members of the Circuit Attorney's Office in which Keyshia stated that Jennifer Davis had a member of her family shoot Keyshia. (ECF No. 1 at 26; ECF No. 9 at 5).

federal courts. *Flieger v. Delo*, 16 F.3d at 875. "A petitioner must present '*both* the *factual and legal* premises' of his claims to the state courts in order to preserve them for federal habeas review." *Flieger*, 16 F.3d at 884 (citing *Cox v. Lockhart,* 970 F.2d 448, 454 (8th Cir. 1992). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010).

The government contends that each of Petitioner's *Brady* claims were based on matters readily discoverable by post-conviction counsel and could have been included in the post-conviction motion. (ECF No. 8 at 15). The government contends that, to excuse Petitioner's procedural default, he would have to demonstrate cause based on a claim of ineffective assistance of post-conviction counsel and prejudice by showing that the claims had sufficient merit. (ECF No. 8 at 15). The government claims that Martin cannot show prejudice and his claims should be denied.

The Court agrees with the government's argument and finds that Martin's *Brady* claims are procedurally barred. However, out of an abundance of caution, the Court also addresses the substance of these claims.

### B.      Analysis of Claims

"To show a *Brady* violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." *United States v. Ladoucer,* 573 F.3d 628, 636 (8th Cir.2009); *United States v. Jeanpierre*, 636 F.3d 416, 422 (8th Cir. 2011). "*Brady* presupposes that a defendant is ignorant of exculpatory material in the hands of the government." *United States v. Rhoads*, 617 F.2d 1313, 1319 (8th Cir. 1980); *United States v. Agurs*, 427 U.S. 97, 110, 96 S. Ct. 2392, 2401, 49 L. Ed. 2d 342 (1976)("if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was

suppressing a fact that would be vital to the defense"). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ladoucer,* 573 F.3d at 636. (quotation, alteration, and citation omitted); *see also United States v. Pulliam,* 566 F.3d 784, 787 (8th Cir.2009) ("The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.") (quotation, alteration, and citation omitted). Further, there is no *Brady* violation if the defendant could reasonably have obtained the material himself. *United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009)(government's failure to produce transcript of state court testimony not a *Brady* violation because the transcript was equally available to the government); *United States v. Albanese,* 195 F.3d 389, 393 (8th Cir.1999); *United States v. Jones,* 160 F.3d 473, 479 (8th Cir.1998) ("There is no *Brady* violation if the defendant[ ], using reasonable diligence, could have obtained the information [himself]." (internal quotation omitted))

1. Terrell McMorris' Prior Conviction

The Assistant Circuit Attorney asked Ms. McMorris about her prior convictions, including if she had any guilty pleas. (Respondent's Exhibit A at 337). The Assistant Circuit Attorney asked Ms. McMorris about her pleas for forgery and possession of a controlled substance. (Respondent's Exhibit A at 337). The Assistant Circuit Attorney did not ask whether those were all of Ms. McMorris' pleas or convictions or if she had any other pleas or convictions. Martin claims that "Ms. MsMorris' testimony would have been received in a totally different light" if the jury had known about her prior conviction for making a false police report. (ECF No. 9 at 8).

Martin's claim of a *Brady* violation is primarily based on the questions asked of Ms. McMorris by the State and the failure of Ms. McMorris to specifically mention her prior conviction for filing a false report when she responded to questioning. The government contends that none of the

questions asked of Ms. McMorris required her to list all of her prior convictions or pleas or asked if she had been convicted of filing a false report. (Respondent's Exhibit A at 337). The government claims that the Ms. McMorris' failure to specifically mention that charge was not a false answer to the questions posed. In addition, the government "believes that the discovery provided [to Martin's trial counsel] included all of the prior convictions of all the witnesses." (ECF No. 8 at 23). The government states that Martin has not alleged that trial counsel was not informed about McMorris' convictions, including the conviction for filing a false report. (ECF No. 8 at 23).

The Court holds that there is no *Brady* violation. The evidence before the Court does not demonstrate definitively that all of Ms. McMorris' prior convictions were not disclosed to defense counsel. The Court further notes that the question to Ms. McMorris did not require her to disclose her conviction for making a false statement, particularly when she admitted to the more serious crime of forgery. Finally, the Court holds that, even if the conviction of Ms. McMorris for making a false statement was withheld, this did not constitute a *Brady* violation because defendant was informed of and Ms. McMorris was asked about the more serious crime of forgery. That is, the Court holds that the Ms. McMorris' conviction for filing a false report would not have been material to a finding of Martin's guilt under *Brady*.

2. Alleged Plea Deals

During her testimony, Keyshia also admitted that she had pending charges against her in three cases, including one for discharging a firearm from a motor vehicle. (Respondent's Exhibit A at 294). Keyshia testified that there was no deal regarding any of those cases in exchange for her testimony. (Respondent's Exhibit A at 294). On cross-examination, Keyshia claimed that she was not worried about her charges. (Respondent's Exhibit A at 322).

During her testimony, Ms. McMorris indicated she had a pending charge against her for discharge of a firearm from a motor vehicle. (Respondent's Exhibit A at 337). Ms. McMorris further testified that no promises were made to her regarding help on her pending case if she said things a certain way. (Respondent's Exhibit A at 338). On cross-examination, Ms. McMorris said she was not looking for help on her pending case because she was planning to go to trial on that case. (Respondent's Exhibit A at 348).

The records from the Circuit Court of the City of St. Louis reflect that, on the date of Martin's trial, Keyshia was facing charges in three cases, and Ms. McMorris was facing charges in one case. (Respondent's Exhibit M). Ms. McMorris was facing a charge of discharging a firearm as a persistent offender which carried a punishment of fifteen years imprisonment without parole. (Respondent's Exhibit M). Keyshia was facing charges of three counts of possession of a controlled substance which carried a possible range of punishment of one day to seven years imprisonment, discharging a firearm which carried a punishment of fifteen years imprisonment, and a class A felony of trafficking in the second degree, which carried a possible range of punishment of ten to thirty years or life imprisonment. (Respondent's Exhibit M).

On November 27, 2006, approximately ten weeks after Martin's trial, Ms. McMorris entered a plea to an amended charge of assault in the second degree and received a five-year sentence. (Respondent's Exhibit M). On that same date, Keyshia entered a plea to all three counts of possession of a controlled substance for which she received a seven year sentence, an amended charge of assault in the second degree (in place of the charge of discharging a firearm for which she received a seven year sentence), and an amended charge of the class B felony of trafficking in the second degree for which she received a nine-year sentence. (Respondent's Exhibit M).

Martin argues that there "had to be some cooperation on the part of [Keyshia] and McMorris to

earn these amended charges." (ECF No. 9 at 9). The government states that Martin provides only speculation that those plea deals were a reward for their testimony against Martin. Martin has no evidence supporting his allegation that an offer was made to Keyshia or Ms. McMorris prior to Martin's trial in exchange for their testimony or that the State made any indication to Keyshia's counsel or Ms. McMorris' counsel that the State would extend favorable consideration to Keyshia and Ms. McMorris in exchange for their testimony. Rather, the government points out that Keyshia and Ms. McMorris were asked at trial about their pending criminal cases and both indicated that no offer had been made and they were not expecting or hoping for favorable treatment in exchange for their testimony. (Respondent's Exhibit A at 294, 322, 37-38), 348).

Given that two months passed between the trial and the resolution of Keyshia's and McMorris' cases, the government claims that there is no basis to believe that the State failed to disclose the status of negotiations to trial counsel or that Keyshia or Ms. McMorris falsely testified about the status of their cases. The government asserts that *Brady* merely requires accurate pre-trial disclosure of information about pending cases that might create a bias for a witness to testify favorably to the State. (ECF No. 8 at 24). The government maintains that *Brady* does not prohibit the State from changing its mind and making a plea offer to a witness weeks after the trial and that the subsequent plea deal creates no inference that there was a deal in place prior to trial which was not disclosed. (ECF No. 8 at 24).

The Court holds that this does not constitute a *Brady* violation because Martin has presented only conjecture that a plea agreement with Keyshia and McMorris had been reached at the time of his trial. Conjecture alone is not sufficient and Martin fails to prove this *Brady* claim. A subsequent plea deal two months after Martin's trial does not provide evidence that Keyshia and Ms. McMorris had pending plea deals at the time they testified.

3. Reports

Martin notes that the original police report and subsequent investigative report noted that Keyshia was uncooperative in coming forward but that the original incident report was not disclosed to the defense. (ECF No. 1 at 24-25). At the pre-trial bond hearing, trial counsel presented evidence regarding the conversation between Keyshia and Jennifer. (Respondent's Exhibit O/Court Order of October 4, 2004). During her testimony, Keyshia stated that she recognized who shot her because she had encountered him previously and called that person "Porky" but he actually went by the nickname "Poke" and "Big Poke". (Respondent's Exhibit A at 303). She identified Martin in court as the person who shot her. (Respondent's Exhibit A at 304). Keyshia also indicated that, while she did not know that Martin's relationship to the Davis family, she believed that he was related to the Davis family in some way. (Respondent's Exhibit A at 306). Keyshia and detective Griffin also indicated that she picked Martin out of a photographic line-up approximately two months after the shooting. (Respondent's Exhibit A at 274-77, 306-08).

Tyronne Harris also testified that Martin came to his house on the morning of September 7 and he knew Martin as "Porky." (Respondent's Exhibit A at 242-44). Tyrone indicated that Martin initially asked to speak to Torey Miller and then asked to speak to Keyshia. (Respondent's Exhibit A at 240-42, 248-50). Tyrone also identified Martin from a photographic line-up approximately one week after the identification by Keyshia. (Respondent's Exhibit A at 244-47, 278-81).

In his testimony, Detective Griffin indicated that, initially, he had trouble making contact with Keyshia and did not get in touch with Keyshia until November 2002. (Respondent's Exhibit A at 268 at 271). Detective Griffin also testified that Keyshia, when she talked with him in November 2002, identified the shooter as "Porky," and indicated that "Porky" was Ebony's brother. (Respondent's Exhibit A at 272). Trial counsel cross-examined Deputy Griffin with his

police report. (Respondent's Exhibit A at 289-91). Officer Conklin indicated that he did not get any description of the shooter from Keyshia on the night of the shooting (Respondent's Exhibit A at 216).

The government contends that "on information and belief," all reports regarding the offense were disclosed to defense counsel. (ECF No. 8 at 25). To the extent that Martin alleges that the State was required to disclose the reason why it delayed filing charges against Martin, the government contends that such information involves the "personal mental impressions of the attorneys working the case, and would not qualify as Brady material because such information would not be evidence." (ECF No. 8 at 25). The government maintains that Martin has offered no basis for concluding that any *Brady* material was not disclosed to trial counsel or that the State failed to disclose all evidence. (ECF No. 8 at 25).

The Court holds that Martin has not demonstrated a Brady violation based upon the failure to turn over any reports related to the timing of charging Martin. Martin has not demonstrated that any such material exist and were not disclosed. In addition, the government was not required to turn over material related to the timing of the charging of Martin because this material would constitute attorney work product.

4. Statements about Jennifer's Involvement

Martin claims that Keyshia made a prior statement in the presence of Assistant Circuit Attorney Robert Craddick and his investigator, Jim Mariano, where Keyshia yelled "Jennifer Davis had one of her family members shoot me." (ECF No. 1 at 25). The government contends that the record from the trial court demonstrates that Martin knew about Keyshia's statements as early as October 2004, more than two years prior to trial. (Respondent's Exhibit O/Court Order of October 4, 2004). Therefore, the government argues there was no *Brady* violation because Martin was aware of this information through other means. (ECF No. 8 at 25). Additionally, the

government states that Keyshia's alleged comment was ambiguous at best. (ECF No. 8 at 26). The government maintains that Keyshia's failure to refer to Martin by name or nickname and, instead, describing him as a relative of Jennifer does not indicate that Keyshia was unable to identify Martin by sight and the statement was not exculpatory. (*Id.*)

The Court holds that the October 4, 2004 Order demonstrates that Martin's counsel was aware of Keyshia's statement as of that date. (Respondent's Exhibit O/Court Order of October 4, 2004). Therefore, there could be no *Brady* violation. Likewise, and as discussed more herein, the Court holds that such statement was not exculpatory because Martin was a member (or treated as a member) of Jennifer Davis' family and, therefore, corroborated Keyshia's identification of Martin.

5. Ambulance Reports

A blood test taken shortly after Keyshia was admitted to the hospital showed the presence of opiates, which could include heroin, morphine, or codeine. (Respondent's Exhibit B at 64, 67, 69-70). The test was taken prior to the hospital giving Keyshia any morphine or other pain medication. (Respondent's Exhibit B at 67). Martin claims that the EMS report would have indicated that Keyshia "was not given any opiate based medication while en route to St. Louis Univeristy Hospital for her injuries" and he would have used the EMS report to "impeach [Keyshia's] testimony that she only used marijuana and x-pills on the night prior to the shooting." (ECF No. 9 at 6).

During the cross-examination of Martin's expert, there was a bench conference about whether the expert could draw certain conclusions because the records he reviewed did not include the EMS records. (Respondent's Exhibit B at 74-79). During this conference, trial counsel indicated that he had asked for all medical records but that the EMS records were not included. (Exhibit B at 74-75). The Assistant Circuit Attorney indicated that medical records had been

subpoenaed and turned over to Martin's counsel, but counsel did not know if the response to the subpoena included the EMS records. (Exhibit B at 76).

The government notes that, generally speaking, the prosecution does not have an obligation under Brady to disclose records that are not within its possession. *See Johnson v. Norris*, 537 F.3d 840, 847 (8th Cir. 2008)("The Arkansas court did not unreasonably apply *Brady* when it said that the State has no obligation to disclose medical records that are not in its possession."). Although the prosecutor stated he subpoenaed and obtained Keyshia's hospital records, the trial court record does not reflect that the prosecutor had possession of her ambulance records. (ECF No. 8 at 26).[5] Additionally, the government argues that the value of any ambulance records would have been marginal. (ECF No. 8 at 27).

The Court finds no *Brady* violation because there is no evidence that the prosecutor was in possession of the EMS records. *See Johnson*, 537 F.3d at 847. In addition, Martin clearly knew of the ambulance records but failed to obtain them. Martin knew of the EMS records and had those records been subpoenaed then they would have been forthcoming. *See United States v. Rhoads*, 617 F.2d 1313, 1319 (8th Cir. 1980). Therefore, the Court finds no *Brady* violation based upon an alleged failure to turn over the records.

## II. Ground 2

Martin claims that trial counsel was ineffective because trial counsel: 1) only minimally cross-examined Keyshia about prior statements regarding her description of the shooter; 2) failed to cross-examine Keyshia about her statement that Jennifer has one of Jennifer's family members shoot her; 3) failed to call witnesses (specifically an assistant circuit attorney and an investigator for the Circuit Attorney's Office) to testify about Keyshia's statements that Jennifer had one of

---

[5] The government admits that "[a]rguably, the failure to obtain ambulance records might constitute a violation of Missouri Rule 25.03(C), but such a claim is outside the scope of this petition which is limited to the issue of whether petitioner's conviction was in violation of federal law." (ECF No. 8 at 26).

Jennifer's family members shoot Keyshia; and 4) failed to conduct a background check on the State's witnesses, particularly Ms. McMorris. (ECF No. 1 at 43-48).

A. Petitioner's Claim in State Court

In his pro se post-conviction motion and in his amended post-conviction motion, Martin, in relevant part, claimed that trial counsel was ineffective for failing to call Robert Craddick as a witness to testify as to Keyshia's statements indicating that she did not know who shot her (Respondent's Exhibit H at 10-11; Respondent's Exhibit I at 8-9). The government notes that none of the remaining claims were included in the pro se or the amended motion. (ECF No. 8 at 28 (citing Respondent's Exhibit H at 3-14; Respondent's Exhibit I)). This claim was not included in the pro se or the amended motion. (ECF No. 8 at 28 (citing Respondent's Exhibit J).

B. Failure to Exhaust

As previously discussed, when a petitioner has not properly exhausted state remedies on a claim and the time for doing so has expired, he has procedurally defaulted on that claim. If a petitioner has procedurally defaulted on a claim, then federal habeas review of that claim is not permitted unless the petitioner can show "cause and prejudice" excusing that procedural default. *Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010).

The Supreme Court in *Martinez v. Ryan* held that ineffective assistance of post-conviction motion counsel could qualify as cause excusing the failure to raise a claim in the post-conviction motion. 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). To demonstrate cause under *Martinez*, a petitioner must show that initial post-conviction counsel was ineffective in failing to raise a substantial claim of ineffective assistance of trial counsel. *Id.* at 1318-19.

For claims that were raised in the motion court, however, ineffective assistance of post-conviction appellate counsel is not cause permitting a claim to be raised in federal court. *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). This holding is

not modified by *Martinez v. Ryan*, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). *See Arnold v. Dormire*, 675 F.3d 1082 (8th Cir. 2012).

Because claims related to Keyshia's statements about Jennifer were included in the amended post-conviction motion, but not raised on the appeal from the denial of those claims, such claims are procedurally barred and petitioner has failed to show cause and prejudice. Further, for the reasons discussed below, Martin has failed to show prejudice from the failure to raise the claims related to additional cross-examination of Keyshia or any failure related to a prior conviction of Ms. McMorris for making a false report. Based upon this evidence, the Court finds that Martin's claims in Ground 2 are procedurally barred.

C.   Evidence in State Court

In the alternative, the Court also addresses the substance of Martin's ineffective assistance of counsel claim. During her testimony, Keyshia stated that she recognized who shot her because she had encountered him previously and called that person "Porky," but he actually went by the nickname "Poke" and "Big Poke." (Respondent's Exhibit A at 303). She identified Martin in court as the person who shot her. (Respondent's Exhibit A at 304). Keyshia also indicated that, while she did not know Martin's relationship to the Davis family, she believed he was related to the Davis family in some way. (Respondent's Exhibit A at 306).

During a pre-trial deposition, Keyshia gave a description of her shooter. (Respondent's Exhibit A at 329). During cross-examination, trial counsel asked Keyshia about that description, focusing on the description of Martin's hair. (Respondent's Exhibit A at 329-30). On redirect, Keyshia said that she would be able to recognized Martin despite changes to his hair style. (Respondent's Exhibit A at 334-35). On cross-examination, trial counsel also asked Keyshia about her lack of familiarity with the male members of Ebony's family. (Respondent's Exhibit A at 330-31). Trial counsel also asked Keyshia about her encounter at the night club and attempted

to get Keyshia to acknowledge that she never heard Martin admit to shooting her at the night club, but Keyshia only said that she did not hear everything that Martin said that evening because of the noise and she left to get the guards. (Respondent's Exhibit A at 333-34).

In the State's direct examination, the State asked Ms. McMorris about some of her prior offenses, including two forgery convictions, but not about her conviction for making a false statement. (Respondent's Exhibit A at 337). During the cross-examination of Ms. McMorris, trial counsel asked Ms. McMorris about her deposition testimony regarding the crowd at the club. (Respondent's Exhibit A at 349-50). Trial counsel also asked about her relationship with Keyshia, her criminal history, and the pending charges. (Respondent's Exhibit A at 347-52).

Martin testified at trial. During his testimony, Martin claimed that he found out about Ebony's death shortly after midnight and went to the hospital, driving his burgundy car. (Respondent's Exhibit A at 387-88). He said no one else was at the hospital, so Martin left around dawn to go to his aunt Terecity Young's house. (Respondent's Exhibit A at 388). Martin claimed that he stayed at his aunt's house for several hours before leaving with his cousin, Tyrenna Young, and her boyfriend to go to Jennifer's (Ebony's mother's) house. (Respondent's Exhibit A at 389, 403). Martin denied knowing Keyshia from before the shooting. (Respondent's Exhibit A at 395-96). Martin also claimed that the last time he kept his hair in the style which Keyshia attributed to the shooter was in approximately 1989. (Respondent's Exhibit A at 396). Martin admitted that he and Ebony were raised together and he considered her to be like a sister. (Respondent's Exhibit A at 399, 406-07).

Trial counsel also called other members of the family to confirm Martin's alibi, including his brothers Darrian Martin and Keown Martin and his mother Angela. (Respondent's Exhibit A at 428-32; Respondent's Exhibit B at 3-8, 31-36). Trial counsel also called Terry Martinez, a pharmacologist to testify that he believed, based upon the presence of an opiate in Keyshia's

system and her behavior in the hospital, that Keyshia was going through opiate withdrawal which might impair her perception of events on September 7 and her ability to remember them later, as would the presence of cannabinoids in her system. (Resopondent's Exhibit B at 64-67, 69-73, 79-81).

During the post-convition hearing, Martin testified that he wanted Mr. Craddick called as a witness but Martin never testified as to what he anticipated Mr. Craddick would say. (Respondent's Exhibit G at 42-44). Mr. Craddick was not called as a witness at the post-conviction hearing and trial counsel was not called as a witness to explain the reasons for his trial decisions. (Respondent's Exhibit G). The motion court found that there was insufficient evidence to support the claims related to Mr. Craddick. (Respondent's Exhibit H at 28-29).

D. Analysis of Claims

1. Legal Standard for Ineffective Assistance of Counsel

To support an ineffective assistance of counsel claim, a convicted movant must first show "that his counsel's performance was deficient, and that he suffered prejudice as a result." *Paul v. United States*, 534 F.3d 832, 836 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The movant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Malcom v. Houston*, 518 F.3d 624, 626 (8th Cir. 2008). A reasonable probability is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance

prejudiced his defense." *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (citations omitted).

    2.    Discussion

    a.    Cross-examination of Keyshia about Description of Shooter

Martin claims that trial counsel "should have questioned [Keyshia] further to uncover why there was such a descrepency in her description of the 'shooter.'" (ECF No. 9 at 21-22). Trial counsel questioned Keyshia about the description she gave of the shooter in her deposition. (Respondent's Exhibit A at 329-30). Trial counsel also introduced evidence about Martin's appearance at the time of the shooting, an appearance that did not match Keyshia's description in the deposition. (Respondent's Exhibit A at 396). Other than the statement to Mr. Craddick, which is addressed below, it is unclear what additional information Martin claims should have been brought out by cross-examination. Likewise, the fact that Keyshia had given a description of Martin was in evidence as was Martin's claim that his appearance at the time of the offense did not match the description given by Keyshia. Failing to present cumulative evidence does not support a finding of prejudice. *See Fields v. Roper*, 448 F. Supp. 2d 1113, 1128 (E.D. Mo. 2006)("merely cumulative evidence not required to be presented). The Court holds that counsel adequately questioned Keyshia, particularly given that Martin cannot identify what additional evidence would have been gathered by additional questioning. Martin has not shown prejudice and his ineffective assistance of counsel claim fails.

    b.    Evidence Related to Keyshia's Statements to Jennifer

The government notes that Martin's arguments on these claims is contradicted by his argument on the comparable claim in Ground One. If Martin and trial counsel were aware that Keyshia made the alleged statement and Mr. Craddick was a witness to that statement, then there is no potential *Brady* issue. (ECF No. 8 at 37). On the other hand, if trial counsel was unaware of

the statement, then trial counsel could not be incompetent for failing to produce that evidence at trial. (ECF No. 8 at 37). The records of the trial court demonstrates that counsel was aware of this evidence, but the trial record still does not support a claim of ineffective assistance of counsel. (ECF No. 8 at 37). Martin asserts that he "had no knowledge of Keyshia's statement to Mr. Craddick prior to trial" and "did not learn of Keyshia's statement made to Mr. Craddick until his aunt [Jennifer Davis] got involved with his case after Mr. Martin's appellate and post-conviction counsel had failed to obtain his release." (ECF No. 9 at 22).

According to the affidavit of Jennifer, Keyshia told Mr. Craddick that "Jennifer had one of her family members shoot me." (ECF No. 8 at 37 (citing ECF No. 1-3 at 2). While Martin wants to claim that this statement was favorable evidence, the testimony from Keyshia indicated that she did not know Martin's name at the time, and merely knew him by a nickname. (Respondent's Exhibit A at 303). Keyshia also indicated that she knew that Martin was related to the Davis family, but did not know the exact relationship. (Respondent's Exhibit A at 306).

Under these circumstances, the government contends that Keyshia's alleged statement to Mr. Craddick is ambiguous. (ECF No. 8 at 37). The statement appeared to be made in the context of Keyshia wanting to talk to Mr. Cradick during the trial of Mr. Miller, Keyshia's brother, to indicate that Jennifer was behind Martin's shooting of Keyshia. According to Martin's testimony, he was not present for Mr. Miller's trial. (Respondent's Exhibit A at 407). With Martin not present and Keyshia not having a "real" name for Martin, a description of Martin as a member of Jennifer's family instead of by a nickname does not indicate that Keyshia was confused about or did not know who shot her, particularly in the context of trying to get Mr. Craddick to do something about Jennifer. The government contends that Keyshia's reference to her shooter as a member of Jennifer's family was consistent with her trial testimony and, therefore reasonable trial counsel would be hesitant to broach this matter on cross-examination. (ECF No. 8 at 38). The

government argues that there is no reasonable probability of prejudice because the statement to Mr. Craddick was not inconsistent with Keyshia's trial testimony.

The Court agrees Keyshia's statement did not contradict her testimony that she believed that Jennifer Davis' family was behind her shooting. In fact, Martin admits this relationship and refers to Jennifer Davis as his aunt. *See* ECF No. 9 at 22. Therefore, the Court finds no contradictory statement or that *Brady* material was withheld from Martin and his claim for ineffective assistance of counsel fails.

c. Failure to Cross-Examine Ms. McMorris about her Prior for Filing a False Police Report

Martin argues that "if his trial counsel had acted in a professional manner he would have discovered Ms. McMorris's undisclosed prior conviction for 'filing a false report,' which trial counsel did not." (ECF No. 9 at 22). The government also asserts that this claim is contradictory to Martin's assertion in Ground One. Because the Strickland test for prejudice is based upon the *Brady* test for materiality, the government maintains that this claim only matters if the State did adequately disclose the fact of Ms. McMorris' prior misdemeanor conviction (or was not required to because Martin was already aware of it). (ECF No. 8 at 39). Therefore, assuming that trial counsel was aware of the prior offense and opted against using it to impeach Ms. McMorris, the government concludes that this claim fails because Martin has not demonstrated any prejudice. (ECF No. 8 at 39). During direct examination, McMorris admitted to entering two guilty pleas for forgery, which demonstrated that Ms. McMorris had a history of engaging in deceptive and dishonest conduct. (ECF No. 8 at 39-40). Therefore, evidence of an additional, and less serious claim for filing a false police report would have been cumulative to the evidence already before the Court and would not have affected the result. (ECF No. 8 at 40).

The Court agrees that the evidence regarding Ms. McMorris' filing a false police report was merely cumulative and would not have impacted the result of the Court. *See Fields*, 448

F.Supp.3d at 1128. Therefore, the Court finds that this is not a basis for an ineffective assistance of counsel claim.

## III.    Ground Three: Ineffective Assistance of Appellate Counsel

Martin claims he received ineffective assistance of appellate counsel when appellate counsel failed: 1) to raise Brady claims on appeal related to the EMS report and 2) to raise claims related to the failure to grant a mistrial when the State asked questions about the EMS report. (ECF No. 1 at 50-55). Martin did not include any claim about appellate counsel in either his pro se or amended post-conviction motions. (Exhibit H at 3-14; Exhibit I).

A. Failure to Exhaust Administrative Remedies

As previously discussed, when a petitioner has not properly exhausted state remedies on a claim and the time for doing so has expired, he has procedurally defaulted on that claim. If a petitioner has procedurally defaulted on a claim, then federal habeas review of that claim is not permitted unless the petitioner can show "cause and prejudice" excusing that procedural default. *Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010).

For the most part, ineffective assistance by post-conviction counsel is not considered to be external to the defendant, and does not demonstrate cause for the failure to raise a claim in state court. *Coleman v. Thompson*, 501 U.S. 722, 752-57 (1990). The Supreme Court in *Martinez v. Ryan* recognized a limited exception to this rule when the ineffective assistance by post-conviction counsel is the failure to raise a claim about trial counsel when the post-conviction motion is the first opportunity to raise a claim about trial counsel's actions; the Court recognized that, under this circumstance, post-conviction counsel is acting as quasi-appellate counsel. *Martinez,* 132 S. Ct. at 1315. In all other circumstances, the rule in *Coleman* remains intact. *Id.* at 1315, 1320.

Martin challenges the omission of claims for ineffective assistance of appellate counsel, but an allegation related to the ineffective assistance of post-conviction counsel does not

demonstrate cause under *Coleman* and *Martinez*. Martin attempts to evade this by claiming that post-conviction counsel had a conflict of interest because post-conviction counsel was also appellate counsel. Martin asserts, without any support, that he was not aware of the conflict of Mr. Frank Anzalone and Ms. Stormy White acting as both appellate and post-conviction counsel until "well after the fact and his direct appeal and subsequent post-conviction proceedings had concluded." (ECF No. 9 at 25). The government argues that Martin's complaints about the ethics of post-conviction counsel should not be brought in a federal habeas action. (ECF No. 8 at 43-44). The Eighth Circuit addressed this issue:

No doubt there was a conflict of interest in the present case. The lawyer who represented petitioner on direct appeal came from the same office as the lawyer who had represented him at trial. So far as an argument that trial counsel had been constitutionally ineffective is concerned, direct-appeal counsel had a clear conflict of interest. The same would have been true if the Court had appointed counsel to represent petitioner in a 29.15 or 27.26 proceeding, and that lawyer had come from the same office. The conflict situation addressed in [*Jennings v. Purkett,* 7 F.3d 779, 782 (8th Cir.1993), and *Jamison v. Lockhart*, 975 F.2d 1377, 1380 (8th Cir. 1992)] was quite different. There, it was trial counsel himself who had a conflict of interest, for example, a business connection with a key witness that might have prevented counsel from making a vigorous cross-examination. That sort of conflict was indeed discussed in the context of "cause" for cause-and-prejudice purposes in both the *Jennings* and *Jamison* opinions. The crux of the reasoning in those opinions, however, was that the respective petitioners did not know, or at least claimed not to have known, of the alleged conflict in time to file a 29.15 proceeding within the period allowed by that rule.

It was this lack of knowledge that led us to find "cause" for purposes of the procedural-bar analysis, or, at least, to remand for further findings on the issue of cause. Nothing of the kind exists here. Petitioner's point on the merits is not that trial counsel, at the time of trial, had a conflict of interest, but rather that trial counsel was constitutionally ineffective in other respects-for example, in not properly presenting, through the use of expert witnesses, petitioner's defense of diminished capacity. All of the facts creating that claim had already occurred by the conclusion of the trial, and all of those facts were known to petitioner.

*Burns v. Gammon*, 173 F.3d 1089, 1092-93 (8th Cir. 1999). In absence of such facts, the government claims that an alleged conflict is not cause. (ECF No. 8 at 45; *Burns*, 173 F.3d at 1092-93; Wooten v. Norris, 578 F.3d 767, 784 (8th Cir. 2009)(failure of post-conviction counsel to

disclose the fact that he was disbarred was not cause).

Here, Martin alleges that a conflict of interest exists based upon the fact that post-conviction counsel was also appellate counsel and the facts demonstrate that Martin was aware that he was having the same attorney represent him on appeal. The Court finds that is not probable that he did not know his post-conviction counsel was also his appellate counsel Therefore, under the Eighth Circuit's analysis in *Burns v. Gammon*, the Court holds that no cause exists under this circumstance and the Court dismisses Ground Three on this basis. In any event, the Court finds that the claims in Ground Three fail based upon their substance.

B. Analysis of Claims

In Ground Three, Martin claims that his appellate counsel was deficient for failing to raise the *Brady* violation for failing to disclose the EMS records and for not raising the trial court's failure to declare a mistrial based upon the continued references to the EMS records. Even if the Court reviews the two claims in Ground Three on the merits, these claims still fail as a matter of law because the records demonstrate that Martin was not prejudiced by the failure of appellate counsel to raise these claims and appellate counsel properly omitted these meritless claims from the appeal.

At some point during the pre-trial proceedings, the parties obtained the medical records of Keyshia. (Respondent's Exhibit B at 62-63, 74). The State obtained those medical records by means of a subpoena and turned them over to trial counsel. (Respondent's Exhibit B at 74). Trial counsel provided a copy of those records to Mr. Martinez, Martin's expert witness, for his review in formulating his opinions. (Respondent's Exhibit B at 62-63). The State did not know if the records that it received included any EMS report. (Respondent's Exhibit B at 76). During direct examination of Mr. Martinez, the State challenged Mr. Martinez's testimony regarding what might have been done by the EMS ambulance that transported Keyshia. (Respondent's Exhibit B

at 74). Trial counsel opined that the EMS records fell within the records that had been requested but that the records provided to trial counsel did not include the EMS records. (Respondent's Exhibit B at 74-75). The trial court instructed the State not to refer to something that was not contained in the medical records, and that the parties should be careful, but declined to grant a mistrial. (Respondent's Exhibit B at 78-79). When initially making its objection, the State requested to approach the bench, but the trial court denied that request. (Respondent's Exhibit B at 74). After the State mentioned that Mr. Martinez did not know if EMS had provided any medication to Keyshia, the trial court had the parties approach the bench. (Respondent's Exhibit B at 74). Subsequently, the State asked about reference to EMS contained within the records which had been provided to defense counsel. (Respondent's Exhibit B at 108-09). No request for a mistrial was made in response to these questions. (Respondent's Exhibit B at 108-09). No evidence was presented in connection with the motion for new trial. (Respondent's Exhibit A at 524-31). Appellate counsel did not include any claims related to *Brady* or the failure to grant a mistrial on direct appeal. (Respondent's Exhibit D).

The basis for Martin's ineffective assistance of counsel claim is his assumption that the EMS report contains exculpatory evidence. However, the government argues that there was no evidence presented at the trial or at the hearing on the motion for new trial indicating the contents of the EMS report. (ECF No. 8 at 48). As previously discussed, the EMS report would not qualify as *Brady* material unless the prosecutor subpoenaed the EMS report and then failed to turn it over to trial counsel. (ECF No. 8 at 48). If the EMS report did contain exculpatory material, while not required to obtain that material by *Brady*, the prosecutor would have been required to obtain that material under Rule 25.03(C) of the Missouri Rules of Procedure.[6] The government

---

[6] Missouri Rule 25.03(C) provides "If the defense in its request designates material or information which would be discoverable under this Rule if in the possession or control of the state, but which is, in fact, in the possession or control of other governmental personnel, the state shall use

˘ 25 ˘

contends that because there was no evidence at trial or at the hearing on the motion for new trial regarding the contents of the EMS report, then there was no proof that there was an actual discovery violation, much less proof that the absence of the report hindered Martin's case. (ECF No. 8 at 48). Further, the government points out that Martin never requested a continuance or other sanction beyond opposing references to the separate EMS report at trial. (ECF No. 8 at 48); *see State v. Cook*, 339 S.W.3d 523, 527 (Mo. Ct. App. 2011)(finding no plain error from lack of relief by the trial court). The government noted that under *State v. Thompson*, "[f]undamental unfairness occurs when the state's failure to disclose results in defendant's 'genuine surprise' and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." *Id.*, 985 S.W.2d 779, 785 (Mo. 1999). However, "Defendant's bare assertions of prejudice are not sufficient to establish fundamental unfairness nor do they demonstrate how the outcome of the case was substantively altered." *Id.* Thus, the government argues that under *Thompson*, in the absence of the actual EMS report as part of the record on appeal, any claim of a discovery violation would have failed. (ECF No. 8 at 49). In addition, the government contends that the proper place to raise a *Brady* claim when the allegedly exculpatory material was not part of the trial record is in a Rule 29.15 motion. (ECF No. 8 at 49; *see Buck v. State*, 70 S.W.3d 440, 446 (Mo. Ct. App. 2000)("Rule 29.15 allows a person convicted of a felony to claim after trial that the conviction or sentence imposed violates the constitution and laws of Missouri or the constitution of the United States. The prosecution's nondisclosure, for the reasons discussed above, violated Buck's constitutional right to due process under *Brady*[.]")).[7] The government argues that if

---

diligence and make good faith efforts to cause such materials to be made available to the defense counsel, and if the state's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court, upon request, shall issue suitable subpoenas or orders to cause such material or information to be made available to the state for disclosure to the defense."

[7] Mo.R.Crim.P. 29.15 provides: "A person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of

appellate counsel had attempted to raise a *Brady* claim regarding the EMS report it would have failed. (ECF No. 8 at 49). Further, appellate counsel also would have realized that the *Brady* claim should not have been brought on direct appeal, but should have been addressed at post-conviction proceedings. (ECF No. 8 at 49).

Likewise, the government maintains that Martin's assertion that appellate counsel should have challenged the failure to grant a mistrial fails as a matter of law. (ECF No. 8 at 49). Martin claims the fact that trial counsel did not "make further objection(s) to the State's misconduct [in mentioning the EMS report] only shows the incompetence of trial counsel and his unprofessional conduct." (ECF No. 9 at 28). The trial court ordered the State not to mention matters not included in the records provided to defense counsel, but it did not preclude all mention of the involvement of the EMS. (Respondent's Exhibit B at 78-79). The government notes that the subsequent mention of the EMS was limited to the references to EMS contained within the records provided to defense counsel and Mr. Martinez. (ECF No. 8 at 50 (citing Respondent's Exhibit B at 108-09). Further, the government points out that trial counsel did not make any objection to questions related to those documents and no request for a mistrial was made at that time. (ECF No. 8 at 50 (citing Respondent's Exhibit B at 108-09). Thus, any review of this claim would have been limited to plain error. *See State v. Campbell*, 147 S.W.3d 195, 205 (Mo. Ct. App. 2004)(where a claim is "not properly preserved for appeal and [appellate] review is only for plain error"). Missouri courts have outlined the two-step process for plain error review:

Plain error review involves a two-step process. *State v. Stallings*, 158 S.W.3d 310, 315 (Mo.App.2005). First, we determine whether the claim of error facially

the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15. This Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated. The procedure to be followed for motions filed pursuant to this Rule 29.15 is governed by the rules of civil procedure insofar as applicable."

establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Id.* "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson,* 182 S.W.3d 667, 670 (Mo.App.2005). Absent a finding of facial plain error, this Court should decline its discretion to review the claim. *Stallings,* 158 S.W.3d at 315. "If plain error is found, we proceed to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *Id.* at 315–16.

*State v. Lloyd,* 205 S.W.3d 893, 907 (Mo. Ct. App. 2006). To prevail on plain error review, appellate counsel would have had to show the questions mentioning the EMS were improper and had a "decisive effect on the jury's verdict." *Lloyd,* 205 S.W.3d at 907 (citing *State v. Tripp,* 168 S.W.3d 667, 678–79 (Mo. Ct. App. 2005); *State v. Hightower,* 951 S.W.2d 712, 717 (Mo. Ct. App. 1997)). The government maintains that the questions at issue concerned information provided by EMS to the hospital and not an independent report by EMS and, therefore, the questions fell within the scope of questions permitted by the trial court ruling. (ECF No. 8 at 50). Likewise, Mr. Martinez indicated that he relied on information contained within the records provided by the hospital, including information which came to the hospital from third parties. (Respondent's Exhibit B at 62-63, 80, 82-85). The government contends that the hospital records which mention the EMS were within the proper scope of cross-examination materials because Mr. Martinez based his opinions on these medical records. (ECF No. 8 at 50-51). Thus, in sum, the government concludes that the appellate counsel chose to appeal two claims, one of which was partially preserved and one which was fully preserved, and did not pursue the two claims which were not preserved on appeal and were meritless. (ECF No. 8 at 51). Therefore, government maintains that the failure to pursue these claims this cannot support a finding of ineffective assistance of appellate counsel and ground three should be denied.

Even if the Court reviews the two claims in Ground Three on the merits, these claims still fail as a matter of law because the records demonstrate that Martin was not prejudiced by the failure of appellate counsel to raise these claims and appellate counsel properly omitted these

meritless claims from the appeal. The Court finds that appellate counsel was not ineffective for failing to raise these two claims. First, the Court has already ruled that any failure to provide the EMS reports did not constitute a *Brady* violation. Therefore, the appellate counsel's failure to raise this discovery issue on appeal cannot constitute ineffective assistance of counsel. Martin's belief that there was anything exculpatory in the EMS records is purely conjectural and there is no evidence that Martin was prejudiced by the failure to utilize such records. Further, the Court holds that it was not error for appellate counsel not to raise the continued reference to the EMS records as a basis for a mistrial on appeal. The Court finds that the trial court excluded reference to the EMS records themselves. However, the parties were still able to discuss such records because they were referenced in other hospital records. Indeed, it was proper for counsel to do so because expert Mr. Martinez utilized the hospital records, including references to the EMS records, in his report. Therefore, the Court denies Martin's motion as to Ground Three.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Jerome Martin's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

A judgment dismissing this case is filed herewith.

Dated this 30th day of March, 2015.

Ronnie L. White

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE